2020R00033/TRS

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20- 954 (WJM) |
| | : | |
| v. | : | |
| | : | 18 U.S.C § 666(a)(1)(A) |
| SUDHAN M. THOMAS and | : | 18 U.S.C § 981(a)(1)(C), 982 |
| PAUL H. APPEL | : | 18 U.S.C §§ 1341, 1343, 1344 |
| | : | 18 U.S.C § 1956(a)(1)(B)(i) |
| | : | 18 U.S.C. § 2 |
| | : | 28 U.S.C. §2461(c) |

## INDICTMENT

The Grand Jury in and for the District of New Jersey, sitting at Newark, charges:

## COUNT 1

### Fraud Involving Organization Receiving Federal Funds

1.      At all times relevant to Count 1 of this Indictment:

A.      Defendant SUDHAN M. THOMAS ("defendant THOMAS") was a resident of Jersey City, New Jersey and served as the Acting Executive Director of the Jersey City Employment and Training Program ("JCETP") from in or about January 2019 to in or about July 2019.

B.      Defendant PAUL H. APPEL ("defendant APPEL") was an attorney. Defendant THOMAS hired defendant APPEL as JCETP's outside counsel. Defendant APPEL was the registered agent of Glocal Marketing Solutions Corp ("GMS"), a for-profit corporation, as of on or about May 3, 2017, and the Thomas Family Foundation for America, Inc. (the "Family Foundation"), a non-profit corporation, as of on or about June 19, 2018. The registered address for both entities was Defendant APPEL'S home in New Jersey. Defendant THOMAS was an

incorporator and a member of the Board of Trustees for the Family Foundation as of June 19, 2018, and the registered agent and a trustee since at least on or about May 31, 2019.

C.      JCETP was a registered 501(c)(3) nonprofit organization located in Jersey City that assisted residents of Jersey City to prepare for and enter the workforce. JCETP was mandated as a "One Stop" services provider for Jersey City under the federal Workforce Innovation and Opportunity Act ("WIOA"). The members of JCETP's Board of Directors were appointed by the Mayor of Jersey City and, in turn, voted to hire JCETP's Executive Director. JCETP received federal program benefits in excess of $10,000 during the relevant one-year time period set forth in 18 U.S.C. § 666(d)(5). Among JCETP's funding sources were federal WIOA grants, awarded pursuant to WIOA to strengthen and improve the workforce system and assist workers with significant barriers to employment into high-quality jobs and careers, and grants from the U.S. Department of Housing and Urban Development Community Development Block Grant ("CDBG") program, awarded to expand economic opportunities for individuals with low to moderate income.

D.      The S.J. Thomas Family Revocable Living Trust (the "Family Trust") was an entity for which defendant THOMAS had the power to sign documents. Defendant THOMAS opened a checking account under his name and that of the Family Trust at a certain bank ("Bank A") (the "Family Trust Account") in or about July 2017, with defendant THOMAS as the only authorized signatory for the Family Trust Account.

E.      NextGlocal, Inc. ("Next Glocal") was a for-profit corporation registered in Florida by Defendant APPEL. Defendant THOMAS was a director of Next Glocal. Defendant THOMAS opened a business checking account at Bank A in the name of Next Glocal (the "Next

Glocal Account") in or about May 2018, with defendant THOMAS identified as "President" of Next Glocal and listed as the only authorized signatory for the Next Glocal Account.

### Theft and Fraud Charge

2.     From in or about March 2019 through in or about July 2019, in Hudson County, in the District of New Jersey, and elsewhere, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL,

with defendant SUDHAN M. THOMAS being an agent of JCETP, embezzled, stole, obtained by fraud, and otherwise without authority knowingly converted to the use of any person other than the rightful owner, and intentionally misapplied, money valued at $5,000 and more that was owned by, and was under the care, custody, and control of JCETP.

3.     Using his access to JCETP funds and control of bank accounts held in the name of JCETP, from in or about March 2019 through in or about July 2019, defendant THOMAS, at times with the aid and assistance of defendant APPEL, embezzled, stole and took by fraud more than $45,000 in JCETP funds, as described below.

4.     It was part of this theft and fraud scheme that:

A.     Despite there being existing bank accounts for JCETP at another bank (the "Original JCETP Accounts"), in or about March 2019, defendant THOMAS opened five bank accounts in the name of JCETP (the "JCETP Accounts") at a certain bank ("Bank B") to, at least in part, facilitate defendant THOMAS'S diversion of funds from JCETP. Defendant THOMAS and a JCETP board member ("Individual 2") were the sole authorized signatories on the JCETP Accounts.

B. Between in or about March 2019 and in or about April 2019, defendant THOMAS, with defendant APPEL'S assistance on occasion, caused funds from JCETP purportedly intended for individuals and entities other than defendant THOMAS to be deposited into bank accounts controlled by defendant THOMAS. For instance:

i. On or about March 6, 2019, defendant THOMAS signed a check for $4,968 from one of the Original JCETP Accounts made payable to Defendant APPEL, which defendant APPEL later deposited into a business account in defendant APPEL'S name held at a certain bank ("Bank C"), for which he had sole signature authority ("Bank C Account 1"). Defendant APPEL issued a check for $500 from Bank C Account 1 dated March 6, 2019 that was made payable to a law firm, with "Thomas Settlement" written in the memo line. On or about March 7, 2019, defendant APPEL issued a check for $1,468 from Bank C Account 1 that was made payable to "Next Glocal Inc," and withdrew $3,000 in cash from Bank C Account 1. On or about March 7, 2019, defendant THOMAS caused that $1,468 check and $3,000 in cash to be deposited into the Next Glocal Account.

ii. On or about March 11, 2019, defendant THOMAS caused a $2,500 check dated March 6, 2019, drawn from one of the JCETP Accounts and made payable to JCETP's information technology services provider, hired by defendant THOMAS, to be deposited into the Family Trust Account at an ATM in Jersey City. On or about March 15, 2019, defendant THOMAS caused a $2,200 teller transfer from the Family Trust Account to the Next Glocal Account. On or about March 15, 2019, defendant THOMAS obtained a cashier's check in the amount of $2,700 from Bank A, drawn from the Next Glocal Account and made payable to defendant THOMAS'S landlord in Jersey City, with "NEXTGLOCAL / UNIT #512 MARCH 2019" written in the memo line.

iii. On or about March 21, 2019, defendant THOMAS signed a check for $1,250 from one of the Original JCETP Accounts made payable to defendant APPEL, which defendant APPEL later deposited into Bank C Account 1. On or about March 22, 2019, defendant APPEL issued a check for $1,250 from Bank C Account 1 made payable to "cash," with "Next Glocal Acct" written in the memo line. On or about March 22, 2019, defendant THOMAS caused $1,250 in cash to be deposited into the Next Glocal Account.

iv. On or about April 4, 2019, defendant THOMAS signed a check for $3,690 from one of the JCETP Accounts made payable to defendant APPEL, which defendant APPEL later deposited into Bank C Account 1. On or about April 5, 2019, defendant APPEL issued a check for $3,690 from Bank C Account 1 made payable to "Next Glocal Inc." On or about April 5, 2019, defendant THOMAS caused that $3,690 check to be deposited into the Next Glocal Account.

C.     Between in or about April 2019 and in or about July 2019, defendant THOMAS caused certain checks drawn from the JCETP Accounts to be made payable to cash and then caused large cash deposits to be made into the Next Glocal Accounts. For instance:

i. On or about April 5, 2019, defendant THOMAS caused a check for $500 to be issued from one of the JCETP Accounts made payable to "cash," with "Transfer [illegible]" written in the memo line. Also on or about April 5, 2019, defendant THOMAS caused this check to be cashed at a Bank B branch located in Bayonne, New Jersey.

ii. On or about May 4, 2019, defendant THOMAS signed two separate checks for $4,500 a piece from one of the JCETP Accounts made payable to "cash," each with a series of numbers and dollar amounts written in the memo line. On or about May 6, 2019, defendant THOMAS caused these checks to be cashed at a Bank B branch located in Bayonne, New Jersey. Ultimately, defendant THOMAS caused a $7,000 cash deposit to be made into the Next Glocal Account on or about May 6, 2019.

D.     Between in or about April 2019 and in or about July 2019, defendant THOMAS caused several other checks for thousands of dollars drawn from the JCETP Accounts to be made payable to cash. Defendant THOMAS thereafter used those checks to obtain official checks at Bank B, all of which he made payable to Next Glocal, and which he then deposited into the Next Glocal Account. For instance:

i. On or about April 17, 2019, defendant THOMAS signed a check for $7,500 from one of the JCETP Accounts made payable to "cash," with "For [illegible] Acct / Repairs & Maintenance" written in the memo line, to create the false impression that the check was issued to pay for legitimate JCETP expenses. Defendant THOMAS caused that check to be deposited into a second JCETP Account. On or about April 18, 2019,

- 5 -

defendant THOMAS signed a check for $7,500 from that second JCETP Account made payable to "cash," with "Out Patient Clinic - Capital Purchase Outlay" written in the memo line, again to create the false impression that the check was issued to pay for legitimate JCETP expenses. Defendant THOMAS used that check to obtain an official check for $7,500 from Bank B, which he made payable to "Next Glocal Inc." JCETP did not operate an outpatient clinic and there was no contract or plan for the creation or operation of a clinic or related repairs or maintenance. On or about April 18, 2019, defendant THOMAS endorsed the $7,500 official check and deposited it into the Next Glocal Account at an ATM in Jersey City.

ii.  On or about June 2, 2019, defendant THOMAS signed a check for $6,500 from one of the JCETP Accounts made payable to "cash." Defendant THOMAS used that check to obtain an official check for $6,500 from Bank B, which he made payable to "Next Glocal." On or about June 2, 2019, defendant THOMAS deposited the $6,500 official check into the Next Glocal Account at an ATM in Jersey City.

iii.  On or about June 11, 2019, defendant THOMAS signed a check for $7,500 from one of the JCETP Accounts made payable to "cash," with "JC-Travel/Logistics/Hospitality" written in the memo line to create the false impression that the check was issued to pay for legitimate JCETP-related expenses. Defendant THOMAS used that check to obtain an official check for $7,500 from Bank B, which he made payable to Next Glocal. On or about June 14, 2019, defendant THOMAS deposited the $7,500 official check into the Next Glocal Account at an ATM in Jersey City.

iv.  On or about July 2, 2019, defendant THOMAS signed a check for $5,000 from one of the JCETP Accounts made payable to "cash," with "Landscape / JT" written in the memo line followed by a series of numbers, to create the false impression that the check was issued to pay for legitimate JCETP expenses. Defendant THOMAS used that check to obtain an official check for $5,000 from Bank B, which he made payable to Next Glocal. On or about July 8, 2019, defendant THOMAS deposited the $5,000 official check into the Next Glocal Account at a drive-through ATM terminal in Jersey City.

E.  Between in or about April 2019 and in or about July 2019, defendant THOMAS used the JCETP funds deposited into the Next Glocal Account for personal expenses and transfers into the Family Trust Account. For instance:

i.  Between on or about April 22, 2019 and on or about April 29, 2019, defendant THOMAS used his Next Glocal Account debit card to pay more than $3,500 in expenses incurred during a trip to Las Vegas, Nevada, including approximately $1,463 for travel, a $118 tourist photo, and a $858 helicopter tour.

ii.  On or about May 6, 2019, defendant THOMAS obtained a cashier's check in the amount of $2,900 from Bank A, drawn from the Next Glocal Account and made payable to defendant THOMAS'S landlord in Jersey City, with "(SUDHAN THOMAS APRIL 512)" written in the memo line. On or about May 6, 2019, defendant THOMAS also obtained a second cashier's check in the amount of $2,900 from Bank A, drawn from the Next Glocal Account and made payable to defendant THOMAS'S landlord in Jersey City, with "(SUDHAN THOAMS MAY 512)" written in the memo line.

iii.  On or about June 6, 2019, defendant THOMAS caused approximately $2,000 to be transferred from the Next Glocal Account to the Family Trust Account. Defendant THOMAS used that money to obtain an official check for $1,550 dated June 6, 2019 from Bank A, which he made payable to a private school in Jersey City at which his relative was a student.

iv.  On or about June 17, 2019, defendant THOMAS caused $1,000 to be transferred from the Next Glocal Account to the Family Trust Account. On or about June 17, 2019, defendant THOMAS made a purchase at a toy store in New York for approximately $74.04 using his Next Glocal Account debit card.

v.  On or about July 8, 2019, defendant THOMAS obtained a cashier's check in the amount of $2,995 from Bank A, drawn from the Next Glocal Account and made payable to defendant THOMAS'S landlord in Jersey City, with "UNIT 512 SUDHAN THOMAS JUL 2019" written in the memo line.

vi.  On or about July 9, 2019, defendant THOMAS purchased airline tickets to Hawaii costing approximately $1,950 using the Next Glocal Account.

vii.  On or about July 15, 2019, defendant THOMAS paid a vacation travel company located in Hawaii more than $1,000 and a helicopter tour company located in Hawaii approximately $200 using his Next Glocal Account debit card. On or about July 16, 2019, defendant THOMAS paid a hotel located in Hawaii more than $2,000 using his Next Glocal Account debit card.

F.        To further this theft and fraud scheme, defendant THOMAS did not submit any invoices, receipts, or other paperwork accounting for any of the above-outlined amounts drawn from the JCETP Accounts, as required by standard, established JCETP accounting procedures and practices that were known to defendant THOMAS.

In violation of Title 18, United States Code, Section 666(a)(1)(A) and Section 2.

## COUNTS 2 to 6

### (Wire Fraud in Connection with the JCETP Scheme)

1.     Paragraphs 1, 3, and 4 of Count 1 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.     From in or about March 2019 to in or about July 2019, in the District of New Jersey and elsewhere, defendant

SUDHAN M. THOMAS

and others knowingly did devise and intend to devise a scheme and artifice to defraud JCETP and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

3.     On or about the dates set forth below, in the District of New Jersey and elsewhere, for the purposes of executing and attempting to execute this scheme and artifice to defraud, defendant

SUDHAN M. THOMAS

knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio, and television communications, in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as described below:

| Count | Approximate Date | Wire Communication |
|---|---|---|
| 2 | March 11, 2019 | Defendant THOMAS caused to be deposited a $2,500 check into the Family Trust Account using an ATM terminal in Jersey City. |
| 3 | April 18, 2019 | Defendant THOMAS deposited a $7,500 official check into the Next Glocal Account using an ATM terminal in Jersey City. |
| 4 | June 2, 2019 | Defendant THOMAS deposited a $6,500 official check into the Next Glocal Account using an ATM terminal in Jersey City. |
| 5 | June 14, 2019 | Defendant THOMAS deposited a $7,500 official check into the Next Glocal Account using an ATM terminal in Jersey City. |

| Count | Approximate Date | Wire Communication |
|-------|------------------|--------------------|
| 6 | July 8, 2019 | Defendant THOMAS deposited a $5,000 official check into the Next Glocal Account using an ATM terminal in Jersey City. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNTS 7 to 9

### (Laundering the Proceeds of the JCETP Scheme)

1.      Paragraphs 1, 3, and 4 of Count 1 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.      On or about the dates set forth below, in Hudson County, in the District of New Jersey, and elsewhere, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL,

knowing that the property involved in the financial transactions set forth below represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, conducted and attempted to conduct financial transactions affecting interstate commerce and involving financial institutions engaged in and affecting interstate commerce as set forth below:

| Count | Approximate Date | Specified Unlawful Activity | Financial Transactions |
|---|---|---|---|
| 7 | March 7, 2019 | 18 U.S.C. § 666(a)(1)(A) | Defendant THOMAS caused defendant APPEL to issue a $1,468 check made payable to Next Glocal from defendant APPEL'S account, and deposited and caused to be deposited the $1,468 check from defendant APPEL into the Next Glocal Account. |
| 8 | March 22, 2019 | 18 U.S.C. § 666(a)(1)(A) | Defendant THOMAS caused defendant APPEL to issue a $1,250 check made payable to "cash," with "Next Glocal Acct" written in the memo line, from defendant APPEL'S account, and caused to be deposited the $1,250 check from defendant |

- 11 -

| | | | |
|---|---|---|---|
| | | | APPEL into the Next Glocal Account. |
| 9 | April 5, 2019 | 18 U.S.C. § 666(a)(1)(A) | Defendant THOMAS caused defendant APPEL to issue a $3,690 check made payable to Next Glocal from defendant APPEL'S account, and caused to be deposited a $3,690 check from defendant APPEL into the Next Glocal Account. |

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) and Section 2.

## COUNT 10

(Scheme to Defraud 2016 Campaign Committee and Contributors of Money and Property)

1.    Paragraphs 1(A) and (B) of Count 1 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.    Defendant THOMAS was a candidate in the Jersey City Board of Education ("JCBOED") elections held on or about November 8, 2016 (the "2016 election") and on or about November 5, 2019 (the "2019 election"). Defendant THOMAS won a seat in the 2016 election, and served as the JCBOED Vice President from in or about January 2017 and as the JCBOED President from in or about 2018 until his term expired in December 2019. Defendant THOMAS did not retain his seat in the 2019 election.

3.    The Thomas for JC-BOED 2016 Committee (the "2016 Campaign Committee") was a political campaign committee that raised funds for defendant THOMAS'S candidacy in the 2016 election and paid expenses related to that candidacy. Defendant APPEL was the registered Treasurer of the 2016 Campaign Committee. The funds raised by the 2016 Committee were kept in and disbursed from a bank account at Bank A (the "2016 Campaign Account"). Both defendant THOMAS and defendant APPEL were the authorized signatories on the 2016 Campaign Account.

4.    The 2016 Campaign Committee was subject to the reporting requirements of the New Jersey Election Law Enforcement Commission ("ELEC").

5.    New Jersey law required that defendant THOMAS and defendant APPEL keep detailed accounts of certain contributions and expenditures for the 2016 Campaign Committee, and to file periodically true and public reports of such certain contributions and expenditures with ELEC. Candidates, including defendant THOMAS, and campaign committee treasurers,

- 13 -

including defendant APPEL, had a duty to honestly account for contributions and expenditures and not to use the funds for any improper purpose, including for personal use, that is, any use of the funds to pay or fulfill a commitment, obligation or expense of any person that would arise or exist irrespective of the candidate's campaign or irrespective of the candidate's ordinary and necessary expense of holding public office.

6.    Defendant APPEL opened three checking accounts under the name Glocal Payment Solutions ("GPS") at Bank A in or about April 2016 (collectively, the "GPS Accounts"); defendant APPEL was the only authorized signatory on two of the GPS Accounts and both THOMAS and defendant APPEL were authorized signatories on the other GPS Account.

7.    The 2016 Campaign Committee collected contributions from various individuals and entities, including a contribution of $8,200 by check dated on or about October 6, 2016. Defendant THOMAS and defendant APPEL caused the $8,200 check to be deposited into the 2016 Campaign Account on or about October 12, 2016.

8.    From in or about September 2016 to in or about November 2016, in Hudson County, in the District of New Jersey, and elsewhere, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL

knowingly and intentionally did devise and intend to devise a scheme and artifice to defraud the 2016 Campaign Committee and its contributors, and to obtain money and property held by the 2016 Campaign Committee, by means of materially false and fraudulent pretenses, representations and promises.

9.    The object of this scheme and artifice to defraud was for defendant THOMAS and

- 14 -

defendant APPEL to obtain money from the 2016 Campaign Account and use that money to pay personal expenses and to cover up this embezzlement and misappropriation by materially false and fraudulent pretenses, representations and promises.

10.    It was a part of this scheme and artifice to defraud that:

A.    On or about September 17, 2016, defendant THOMAS and defendant APPEL caused a check to be issued for $900 from the 2016 Campaign Account made payable to defendant THOMAS, with "Reimbursement" written in the memo line, to create the false impression that the check was issued to pay for legitimate campaign expenses. Defendant THOMAS made no loans to the 2016 Campaign Committee through this time. On or about October 17, 2016, defendant THOMAS and defendant APPEL caused the $900 check to be deposited into a personal checking account in defendant THOMAS'S name held at Bank D, for which defendant THOMAS had sole signature authority (the "Bank D Account"). On or about October 20, 2016, the $900 check was reversed by Bank D.

B.    On or about October 15, 2016, defendant THOMAS and defendant APPEL caused a $4,500 check to be issued from the 2016 Campaign Account made payable to GPS. On or about October 17, 2016, defendant THOMAS and defendant APPEL caused this $4,500 check to be deposited into one of the GPS Accounts, the previous balance of which had been approximately negative $519. On or about October 17, 2016, defendant THOMAS and defendant APPEL obtained a cashier's check in the approximate amount of $3,853 from that same GPS account, made payable to defendant THOMAS'S landlord in Jersey City to pay rent in connection with defendant THOMAS'S personal residence. Defendant THOMAS and defendant APPEL caused the campaign report submitted to ELEC on or about November 7, 2016 to falsely reflect that the $4,500 check was for "campaign development."

- 15 -

C. On or about October 19, 2016, defendant THOMAS and defendant APPEL caused a check to be issued for $1,000 from the 2016 Campaign Account made payable to defendant THOMAS, with "Reimb - Loan" written in the memo line, to create the false impression that the check was issued to pay for legitimate campaign expenses. Defendant THOMAS made no loans to the 2016 Campaign Committee through this time. On or about October 19, 2016, defendant THOMAS and defendant APPEL caused the $1,000 check to be deposited into the Bank D Account. The $1,000 deposit covered a $200 cash withdrawal and debit card purchases, including at a toy store, made by defendant THOMAS after the deposit of the $900 check that was ultimately reversed. Defendant THOMAS continued to use the funds in the Bank D Account to make cash withdrawals and various debit purchases, including for dry cleaning, clothing, and an online personalized gift store purchase. Defendant THOMAS and defendant APPEL caused the campaign report submitted to ELEC on or about November 7, 2016 to falsely reflect that the $1,000 check was for "campaign development."

D. On or about October 19, 2016, defendant THOMAS and defendant APPEL caused a check to be issued for $2,800 from the 2016 Campaign Account made payable to defendant APPEL, with "Reimburse Loan" written in the memo line, to create the false impression that the check was issued to pay for legitimate campaign expenses. In fact, defendant APPEL had not loaned money to the 2016 Campaign Committee up to this time and did not contribute campaign-development services to the 2016 Campaign Committee. Defendant APPEL endorsed the $2,800 check and, on or about October 19, 2016, deposited the check into a business account in defendant APPEL'S name held at Bank E, for which defendant APPEL had sole signature authority (the "Bank E Account"). Defendant APPEL subsequently spent the proceeds of this check to obtain cashier's checks, including one to pay a dog walking service in Jersey City.

- 16 -

Defendant THOMAS and defendant APPEL caused the campaign report submitted to ELEC on or about November 7, 2016 to falsely reflect that the $2,800 check was for "campaign development."

11.     On or about October 12, 2016, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL

knowingly and intentionally transmitted and caused to be transmitted by means of wire, radio and television communications in interstate commerce certain writings, signs, signals, pictures, and sounds, namely, defendant THOMAS and defendant APPEL deposited and caused to be deposited an $8,200 contribution check into the 2016 Campaign Account at an ATM terminal in Jersey City.

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNTS 11 and 12

(Scheme to Defraud 2019 Campaign Committee and Contributors of Money and Property)

1.      Paragraphs 1(A) and (B) of Count 1 and paragraphs 1 to 5 of Count 10 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.      The Thomas for New Jersey Committee (the "2019 Campaign Committee) was a political campaign committee that raised funds for defendant THOMAS'S candidacy in the 2019 JCBOED election and paid expenses related to that candidacy. The funds raised by the 2019 Committee were kept in and disbursed from two bank accounts at Bank F, 2019 Campaign Account A and 2019 Campaign Account B (collectively, the "2019 Campaign Accounts").

3.      The 2019 Campaign Committee collected contributions from various individuals and entities, which included: (1) a contribution of $2,600 by check dated on or about June 1, 2018, which defendant THOMAS caused to be deposited into 2019 Campaign Account A, on or about June 6, 2018; and (2) a contribution of $2,600 by check dated on or about July 8, 2019, which defendant THOMAS caused to be deposited into 2019 Campaign Account B on or about July 24, 2019.

4.      Because the 2019 Campaign Committee accepted monetary contributions in excess of $300 from at least one individual contributor and made disbursements, presumably for campaign expenses, from the 2019 Campaign Accounts, it was subject to the reporting requirements of ELEC, but nevertheless did not file any records of contributions and expenditures with ELEC.

5.      From in or about June 2018 to in or about August 2019, in the District of New Jersey, and elsewhere, defendant

SUDHAN M. THOMAS

- 18 -

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud the 2019 Campaign Committee and its contributors, and to obtain money and property from the 2019 Campaign Committee, by materially false and fraudulent pretenses, representations, and promises.

6. The object of this scheme and artifice to defraud was for defendant THOMAS to obtain money from the 2019 Campaign Accounts and use that money to pay personal expenses and to cover up this embezzlement and misappropriation by materially false and fraudulent pretenses, representations and promises.

7. It was part of the scheme and artifice to defraud that on or about June 7, 2018, defendant THOMAS caused two separate $1,200 checks numbered 0098 and 0099 (totaling $2,400) to be issued from 2019 Campaign Account A made payable to defendant THOMAS, both with "Rep Loan" written in the memo line, to create the false impression that each check was issued to pay for legitimate campaign expenses. These purported campaign expenses were not reported to ELEC. On or about June 7, 2018, defendant THOMAS caused the checks to be deposited into the Family Trust Account. Between on or about June 8, 2018 and June 18, 2018, THOMAS withdrew cash totaling approximately $1,168 from the Family Trust Account and made numerous debit purchases totaling approximately $1,157, including purchases from a pet store, clothing store, dry cleaners, and ride share service.

8. On or about August 8, 2019, defendant THOMAS caused two checks—one for $1,000 and one for $2,600—to be issued from 2019 Campaign Account B made payable to defendant THOMAS, both with "Repayment of Loan" written in the memo line, to create the false impression that each check was issued to pay for legitimate campaign expenses. These purported campaign expenses were not reported to ELEC. On or about August 8, 2019, defendant THOMAS cashed the $1,000 check. On or about August 12, 2019, defendant

- 19 -

THOMAS cashed the $2,600 check.

9.      On or about the dates set forth below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendant

SUDHAN M. THOMAS

knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio and television communication, in interstate commerce, certain writings, signs, signals, pictures and sounds, as set forth below:

| Count | Approximate Date | Wire Communications |
| --- | --- | --- |
| 11 | June 7, 2018 | Defendant THOMAS caused to be deposited a $1,200 check (check number 0098) drawn from 2019 Campaign Account A into the Family Trust Account at an ATM terminal in Bayonne. |
| 12 | June 7, 2018 | Defendant THOMAS caused to be deposited a $1,200 check (check number 0099) drawn from 2019 Campaign Account A into the Family Trust Account at an ATM terminal in Bayonne. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNTS 13 and 14
(Bank Fraud)

1.      Paragraphs 1(A) and (B) of Count 1 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.      Candidate 1 was a candidate in the JCBOED elections held on or about November 6, 2018 (the "2018 election"). Candidate 1 had a campaign committee for Candidate 1's campaign (the "Candidate 1 Campaign Committee") that raised funds and paid campaign expenses associated with Candidate 1's run for office. A certain individual ("Individual 3") managed finances for the Candidate 1 Campaign Committee. Defendant THOMAS was associated with the Candidate 1 Campaign Committee as an unpaid advisor. Defendant THOMAS was not a candidate in the 2018 election.

3.      The 2018 Campaign Committee was an election campaign committee that raised funds and paid campaign expenses for a slate of candidates running in the 2018 election, including Candidate 1. Funds raised by the 2018 Campaign Committee were disbursed from a bank account at Financial Institution 1 (the "2018 Campaign Committee Account"). Candidate 1 was authorized to sign checks from the 2018 Campaign Committee Account.

4.      Financial Institution 1 was a financial institution with headquarters in North Carolina.

5.      Financial Institution 2 was a financial institution with headquarters in New Jersey.

6.      Financial Institutions 1 and 2 were "financial institutions" as that term is defined in Title 18, United States Code, Section 20, and offered, among other services, checking and savings accounts to customers; had deposits insured by the Federal Deposit Insurance Corporation (FDIC); and had branches in New Jersey.

The November 6, 2018 Bank Fraud (Count 13)

7.      On or about November 6, 2018, defendant THOMAS sent Individual 3, via text message, two photographs of a two-page handwritten list entitled "Jersey City" containing the names and contact information for 19 individuals and the message: "Need $100 checks for these guys please . . . ." Defendant THOMAS represented to Individual 3 that the requested checks were payments to individuals who would perform work for the Candidate 1 Campaign Committee on the day of the 2018 election.  Individual 3 responded that the Candidate 1 Campaign Committee only had a budget for eight workers. Defendant THOMAS, referring back to the handwritten list, responded by text message, "The first 6 from page 1 and the first 2 from page 2," meaning that he was seeking eight $100 checks purportedly to pay eight workers.

8.      Based on this request, Candidate 1 issued eight checks for $100 each from the 2018 Campaign Committee Account held at Financial Institution 1 (hereinafter, "the Eight $100 Checks"). Candidate 1 did not date any of the checks and left the payee line blank, with the exception of one check which Candidate 1 made payable to one worker by name.  None of the checks were intended to pay defendant THOMAS.

9.      On or about November 6, 2018, defendant THOMAS endorsed the Eight $100 Checks and then deposited these checks into the Family Trust Account at an ATM in Jersey City.

The November 8, 2018 Bank Fraud (Count 14)

10.     A check dated on or about October 23, 2018 in the amount of $1,000 was drawn from a political committee's account held at Financial Institution 2 (hereinafter, "the $1,000 Check"). The $1,000 Check was made payable to the Candidate 1 Campaign Committee, and was facially unconnected to defendant THOMAS. Between on or about October 23, 2018 and on or about November 8, 2018, defendant THOMAS obtained the $1,000 Check. On or about November

8, 2018, defendant THOMAS endorsed the $1,000 Check and then deposited it into the Family Trust Account at an ATM in Jersey City.

11. Between on or about November 6, 2018 and on or about November 20, 2018, defendant THOMAS made cash withdrawals, bank payments, and debit card purchases from the Family Trust Account totaling approximately $1,781, including debit card payments to a ride share service and two children's museums in Chicago.

12. On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

SUDHAN M. THOMAS

did knowingly and intentionally devise and attempt to devise a scheme and artifice to defraud financial institutions, as defined in Title 18, United States Code, Section 20, whose deposits were insured by the FDIC, as set forth below, and to obtain monies, funds, assets, and other property owned by and under the custody and control of such financial institutions, by means of materially false and fraudulent pretenses, representations, and promises, as follows:

| Count | Approximate Date | Financial Transactions | Financial Institution |
|-------|------------------|------------------------|----------------------|
| 13 | November 6, 2018 | Defendant THOMAS endorsed the Eight $100 Checks drawn from Financial Institution 1 and deposited these checks into the Family Trust Account. | Financial Institution 1 |
| 14 | November 8, 2018 | Defendant THOMAS endorsed the $1,000 check drawn from Financial Institution 2 and deposited it into the Family Trust Account. | Financial Institution 2 |

In violation of Title 18, United States Code, Section 1344 and Section 2.

## COUNTS 15 to 19
(Wire Fraud on a Technology Company)

1.      Paragraphs 1(A), (B), and (E) of Count 1 and paragraph 6 of Count 10 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.      At all times relevant to Counts 15 to 19 of this Indictment, there was a technology company headquartered in Florida providing mobile and banking related products to customers (the "Technology Company").

3.      Between in or about May 2016 and in or about October 2016, in the District of New Jersey and elsewhere, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL

did knowingly and intentionally devise a scheme and artifice to defraud the Technology Company and to obtain money and property from it by means of materially false and fraudulent pretenses, representations, and promises.

4.      The object of the scheme and artifice to defraud was for defendant THOMAS and defendant APPEL to solicit, procure, and obtain money and other things of value from the Technology Company by fraudulently inducing the Technology Company to enter into a purported joint venture and then fraudulently soliciting investment from the Technology Company for the purported joint venture.

5.      It was part of the scheme and artifice to defraud that:

A.      In or about May 2016, defendant THOMAS and defendant APPEL entered into a purported joint venture, NextGlocal, with the Technology Company, with the alleged goal of expanding the Technology Company's business to include a debit card program based on a

- 24 -

sham proposal that defendant THOMAS delivered to the Technology Company's executives. Defendant THOMAS falsely represented to the Technology Company's executives that he operated a company with existing contracts that he would leverage to build a debit card program for the Technology Company in certain target segments, including relationships with card providers and an issuing bank. Defendant THOMAS also falsely represented that he could provide the Technology Company with approximately 360,000 new debit card subscribers. In the end, no meaningful services were ever provided to the Technology Company and no business was generated as a result of the purported joint venture.

B.     Starting in or about May 2016, defendant THOMAS and defendant APPEL discussed plans for the joint venture with the Technology Company by telephone and email. In addition to purported plans involving action items and customer contracts, these plans included a payment schedule wherein defendant THOMAS and defendant APPEL would secure an initial loan of $36,000 from the Technology Company for startup capital to launch Next Glocal, to be paid into a GPS Account controlled by defendant THOMAS and defendant APPEL. To facilitate obtaining this $36,000 payment, defendant THOMAS and defendant APPEL sent the following emails from locations in New Jersey to Technology Company executives in Florida containing false and fraudulent representations and under false pretenses:

> i.  On or about May 25, 2016, in an email addressed to executives of the Technology Company and defendant THOMAS, defendant APPEL wrote: "The first payment of $36,000 is a loan to Glocal, so it can be paid directly to Glocal's account without delay. This will enable us to start operations immediately. We don't have to wait for the incorporation and bank set up to be complete." Defendant APPEL followed up with an email dated May 26, 2016 addressed to an executive of the Technology Company and defendant THOMAS to provide banking instructions for the transfer of the $36,000 loan.

ii. On or about May 26, 2016, in an email addressed to executives of the Technology Company and defendant THOMAS, defendant APPEL wrote: "We are at the launch pad of the joint venture. We have several moving parts of the joint venture that have to be moved along to launch the joint venture. One of the critical starting blocks is the $36,000 initial funding as outlined in the contract due at the time of signing the agreement. Can we arrange for these funds to come in tomorrow so we are not waiting through the holidays to nudge critical components along?"

iii. On or about May 27, 2016, in an email addressed to executives of the Technology Company, defendant THOMAS wrote: "[C]an we have this transfer of funds complete today, I would like to get a few things off the block quickly, let me know if you need any particular information from me to complete the wire transfer process."

C.      On or about June 2, 2016, the Technology Company, through a subsidiary, wired $36,000 from Florida to a GPS Account held in New Jersey for which both defendant THOMAS and defendant APPEL were authorized signatories.

D.      On or about June 2, 2016, defendant THOMAS and defendant APPEL caused a check for $10,000 to be issued from the GPS Account made payable to defendant APPEL. On or about June 2, 2016, defendant APPEL deposited the check into defendant APPEL'S Bank E Account. Between on or about June 2, 2016 and on or about June 6, 2016, defendant APPEL made credit card and web payments from the account totaling approximately $7,898 and spent a further approximately $726 on ATM withdrawals and debit card payments, including to an animal hospital. On or about June 3, 2016, defendant APPEL verbally authorized a $1,200 check payment to Bank E. No substantial part of this $10,000 check was applied towards expenses relating to the purported joint venture.

E.      In addition, defendant THOMAS and defendant APPEL caused additional amounts to be disbursed from the GPS Account for personal expenses incurred by defendant THOMAS, such as:

i. *Preschool Tuition.* On or about June 2, 2016, defendant THOMAS and defendant APPEL caused a debit card payment for $1,020 to be made from the GPS Account to a certain preschool located in Jersey City (the "Preschool") for tuition for defendant THOMAS'S relative. On or about July 5, 2016, defendant THOMAS and defendant APPEL made another debit card payment for $1,020 to the Preschool.

ii. *Rent Payments.* On or about June 3, 2016, defendant THOMAS and defendant APPEL (a) caused a check for $2,850 to be issued from the GPS Account and made payable to defendant THOMAS'S landlord for his personal residence in Jersey City, with "Rent May 16 – June 15" written in the memo line; and (b) caused a second check for $2,850 to be issued from the GPS Account and made payable to defendant THOMAS'S landlord for his personal residence in Jersey City, with "Rent June 16 – July 15" written in the memo line.

F.      After receiving the $36,000 wire transfer from the Technology Company, defendant THOMAS and defendant APPEL falsely represented that they were making progress on the joint venture when, in fact, they had not used the funding they received to advance the purported joint venture. Defendant THOMAS and defendant APPEL nevertheless continued to press for additional funds supposedly needed to build the purported joint venture, including the first of what were to be regular monthly payments of $25,000, working towards a stated $120,000 target for overall "setup fees," by sending emails containing false and fraudulent representations and under false pretenses from locations in New Jersey to Technology Company executives in Florida:

i. On or about June 10, 2016, in an email addressed to executives of the Technology Company and defendant THOMAS, defendant APPEL wrote to confirm that Next Glocal had been incorporated and a bank account for joint venture established. Regarding the bank account, defendant APPEL wrote: "Please use this account for the first monthly payment of $25,000 scheduled for June 18, 2016." Defendant APPEL followed up a short time later with an email to an executive of the Technology Company "enclosing a NextGlocal invoice which requests wire transfer of the funds to cover NextGlocal expenses for June 18 to July 17 . . . . Please . . . keep me advised of progress with respect to the deposit." Defendant APPEL sent another email a short time later to the

- 27 -

same executive enclosing the invoice and wrote: "This is our first month funding and I would like to request to make these funds available slightly earlier on June 15 instead of June 18 . . . I am sending these details and my request in advance so we have sufficient time to operationalize the transfer."

ii. On or about June 11, 2016, after being asked by an executive of the Technology Company for a progress update, in an email addressed to executives of the Technology Company, defendant THOMAS outlined the work that he was purportedly doing to set up the joint venture and committed to providing the Technology Company with biweekly progress reports. He falsely indicated:

> At this time we are putting the building blocks for the product, activation programs, sales team ground ops et al. This is going in parallel with the institutional activation plan . . . . The target to deliver 18,000 cards for the first measurement cycle by October 18, will include a first tranche of cards targeting around 5,000 activations in July (around the 8 to 10 week mark from May 15) and another similar tranche in August (12 to 14 week mark) which should take us to the half way mark (of 18,000) or beyond . . . . All of this ongoing update and measurement information will be captured in my bi weekly reports for governance and management.

Ultimately, defendant THOMAS did not provide biweekly progress reports to the Technology Company, and defendant THOMAS and defendant APPEL never delivered any cards or card activations for the joint venture, either by the target dates committed to in the June 11 email or at any other time.

iii. On or about June 14, 2016, in an email addressed to executives at the Technology Company and defendant THOMAS, defendant APPEL wrote: "[W]e would like the 1st month's operational funding to come in on the 15th rather than the 18th. As you are aware, our operations have already started and we do not want to delay payment to various parties . . . . I would request no delays for the monthly operational funding as requested and as detailed in the joint venture agreement."

iv. On or about July 5, 2016, in an email addressed to executives at the Technology Company and defendant THOMAS, defendant APPEL wrote: "It is now the 5th of July and we still have not received the first month's operational funding. I understand that [defendant THOMAS]

- 28 -

met [an executive of the Technology Company] in Miami twice since this email and has addressed all questions and provided clarifications . . . . Please send us the funds without further delay so as to allow us to kick start the launch of the JV which are currently hindered by the delay in funding from your side."

v. On or about July 6, 2016, in an email addressed to executives at the Technology Company and defendant APPEL, defendant THOMAS provided a list of individuals he had identified who could "play corporate roles in Next Group holdings" and indicated that additional funds would be required for those individuals, including defendant THOMAS and defendant APPEL, because insufficient amounts had been allocated for each role in the next round of funding, totaling $25,000, to provide adequate compensation.

vi. On or about July 8, 2016, in an email addressed to executives at the Technology Company, defendant APPEL wrote: "It is frankly unprofessional for [Technology Company executives] to become unavailable when funding has become such a critical issue. We need your help to reestablish communications. At this time the NextGlocal joint venture is in jeopardy."

vii. On or about July 11, 2016, in an email addressed to executives at the Technology Company and defendant THOMAS, defendant APPEL wrote: "[A]ctivities are now at a standstill. We are requested to have patience, but we have been patient for almost a full month. Again I emphasize that that the joint venture is currently in jeopardy. We need your help in scheduling an immediate conference call with [everyone] listed in this email."

viii. On or about July 13, 2016, defendant APPEL wrote an email to Technology Company executives and defendant THOMAS requesting an update on funding from the Technology Company. A Technology Company executive responded, in sum and substance, that defendant THOMAS would need to connect Technology Company executives with a program manager who could confirm what defendant THOMAS had represented to them before the Technology Company provided additional funding. In response, in an email dated July 14, 2016 addressed to Technology Company executives and defendant THOMAS, defendant APPEL wrote:

> I believe your actions of unilaterally holding back the pilot program funding intended for activating the cards is already jeopardizing the joint venture. The pilot program funding payable monthly @ $ 25,000

- 29 -

was for the card activation and distribution as outlined in the budget annexure of the joint venture agreement. The funds have nothing to do with the choice of a program manager . . . . The joint venture has not budgeted for the $120,000 in setup fees . . . . Is there really a plan to pay this amount when you have problems in meeting the basic monthly $ 25,000 obligation?"

Defendant APPEL then listed a number of points to be addressed at a future presentation to Technology Company executives before admitting that no program manager had yet been engaged:

We believe that all of the above has to be taken into consideration to decide on the program manager." Defendant APPEL continued, "I have to remind you that the joint venture agreement allows Glocal to retain its own program manager for the pilot phase and this is an unnecessary burden being imposed upon Glocal. [Defendant THOMAS] has proposed that we be allowed to proceed in this direction without further jeopardy to the joint venture and later take stock of the situation during the transition from the pilot phase. This is the most reasonable direction, as it will not impact or burden [the Technology Company] or the joint venture. At this time $50,000 in Pilot program funding is due. We believe that [the Technology Company] should immediately wire $25,000 as a sign of good faith so we can continue to commit our resources within the current framework of the joint venture.

G.    On or about August 11, 2016, the Technology Company, through a subsidiary, wired $12,500 from Florida to the GPS Account in New Jersey. Defendant THOMAS and defendant APPEL caused approximately $7,295 to be disbursed out of the GPS Account between on or about August 11, 2016 and on or about August 15, 2016, including: (i) $400 withdrawn in cash, and (ii) two checks written from the GPS Account: (a) one in the amount of $3,500 payable to defendant APPEL, and (b) one in the amount of $2,850 payable to defendant THOMAS'S landlord in Jersey City, with "Rent" and defendant THOMAS'S unit number written

in the memo line, to pay the rent on his personal residence. Defendant APPEL caused the $3,500 check to be deposited into the Bank E Account and then, between on or about August 12, 2016 and on or about August 29, 2016, spent approximately $3,039 on credit card and online payments and approximately $972 on ATM withdrawals and debit card payments, including to purchase movie tickets. An additional approximately $545 was used for debit card payments, including to dry cleaners, Target, a medical insurer, and numerous restaurants. No substantial part of these funds was applied towards expenses relating to the purported joint venture.

6.    On or about the dates set forth below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL

knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio and television communication, in interstate commerce, certain writings, signs, signals, pictures and sounds, as set forth below:

| Count | Approximate Date | Wire Communications |
|-------|-----------------|---------------------|
| 15 | May 26, 2016 | Email from defendant APPEL in New Jersey to Technology Company executives in Florida requesting "$36,000 initial funding" and falsely representing that the funding was a "critical starting block" for "several moving parts" required "to launch the joint venture." |
| 16 | June 2, 2016 | $36,000 wire transfer to the GPS Account in New Jersey controlled by defendant THOMAS and defendant APPEL from the Technology Company in Florida. |
| 17 | June 11, 2016 | Email from defendant THOMAS in New Jersey to Technology Company executives in Florida falsely representing, among other things, that work had commenced related to "the building blocks for the product, activation programs, sales team ground ops et |

- 31 -

| | | |
|---|---|---|
| | | al" and "the institutional activation plan"; that there would be a delivery of 18,000 cards by October 18; and that defendant THOMAS would provide biweekly progress reports throughout the duration of the purported joint venture. |
| 18 | June 14, 2016 | Email from defendant APPEL in New Jersey to Technology Company executives in Florida requesting operational funding and falsely representing that "operations have already started and we do not want to delay payment to various parties." |
| 19 | August 11, 2016 | $12,500 wire transfer to the GPS Account in New Jersey controlled by defendant THOMAS and defendant APPEL from the Technology Company in Florida. |

In violation of Title 18, United States Code, Section 1343 and Section 2.

**COUNTS 20 to 26**
(Mail and Wire Fraud on a Housing Company)

1.      Paragraphs 1(A) and (B) of Count 1 of this Indictment are hereby realleged and incorporated by reference as if fully set forth herein.

2.      At all times relevant to Counts 20 to 26 of this Indictment, there was a company producing modular housing units headquartered in Florida (the "Housing Company").

3.      Between in or about October 2016 and in or about April 2017, in the District of New Jersey and elsewhere, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL

did knowingly and intentionally devise a scheme and artifice to defraud the Housing Company and to obtain money and property from it by means of materially false and fraudulent pretenses, representations, and promises.

4.      The object of the scheme and artifice to defraud was for defendant THOMAS and defendant APPEL to solicit, procure, and obtain money and other things of value from the Housing Company by fraudulently inducing the Housing Company to enter into a purported sales representative agreement and then fraudulently soliciting monthly retainer payments from the Housing Company without providing the promised services in return.

5.      It was part of the scheme and artifice to defraud that:

A.      In or about October 2016, defendant THOMAS and defendant APPEL met with the owners of the Housing Company to discuss a purported partnership to sell modular homes to veterans and the homeless in furtherance of which defendant THOMAS offered to leverage his future position as a public official. After this meeting, defendant THOMAS and defendant APPEL continued to pursue a contract with the Housing Company in communications by phone and email.

- 33 -

B.    On or about October 4, 2016, in an email to an owner of the Housing Company and defendant APPEL, defendant THOMAS proposed a phased "landscape of opportunity" he and defendant APPEL would create for the Housing Company: in phase one, to supply modular housing to veterans in Hawaii, Florida, California, and Texas; in phase two, to expand to supplying the homeless population in Hudson County, New Jersey; and, in phase three, to expand to "the rest of the United States and International markets." Defendant THOMAS falsely represented and promoted the false pretense that, in order to undertake "a 6 to 9 month outreach program" with the goal of "a summer 2017 pilot launch" to be followed by a "comprehensive program" launch by January 1, 2017, he and defendant APPEL, operating under the entity "Glocal Housing Solutions" ("GHS"), would "need a bit of financial support in advance to make this happen . . . . We would like to propose a monthly draw of $ 3,500 funded by [the Housing Company] to Glocal [Housing Solutions] starting 11/01/2017 . . . . We will need this funding to manage both local & national initiatives . . . . We will manage all operational expenses from within this budget as well."

C.    On or about November 9, 2016, in an email to the owners of the Housing Company, defendant APPEL sent a proposed agreement between the Housing Company and GHS which falsely promised and represented that:

  i.   "[GHS] has located potential prospects for purchase of [The Housing Company's] Housing Units . . . for use in the United States and elsewhere";

  ii.  "[GHS] will investigate and market opportunities to employ the . . . Units in warm areas of the United States with a focus on Veterans and homeless persons . . . . Glocal will use its best efforts to complete a sale of no less than 10 Units"; and

iii. "[GHS] will report every third Friday on progress in developing opportunities for deployment of the Units, with the initial report to be made Thanksgiving week."

The proposed agreement also sought $2,000 monthly payments from the Housing Company for four to eight months. Also attached to the email was a letter from defendant APPEL dated November 9, 2016, requesting that the $2,000 monthly payments provided for in the agreement be made payable to GPS and sent to a certain address in Jersey City.

          D.      Ultimately, defendant THOMAS and defendant APPEL induced the Housing Company to enter into the proposed agreement. Although the Housing Company went on to make five $2,000 monthly payments to GHS, as per the agreement, defendant THOMAS and defendant APPEL (i) did not provide progress reports to the Housing Company every third week, and (ii) identified no business opportunities, with veterans, homeless individuals, or otherwise, involving the sale of any housing units. Moreover, no substantial portion of the payments made by the Housing Company were used by defendant THOMAS and defendant APPEL in order to provide the services promised to the Housing Company. In fact, defendant THOMAS and defendant APPEL used the $2,000 payments from the Housing Company as set forth below.

i. The Housing Company first made a retainer payment by a check for $2,000 dated November 18, 2016 payable to GHS, with "Apply to Acct agreement" written in the memo line. On or about November 28, 2016, defendant THOMAS and defendant APPEL caused the Housing Company's check to be deposited into the GPS Account for which both defendant THOMAS and defendant APPEL had signature authority. On or about December 1, 2016, defendant THOMAS and defendant APPEL caused a debit payment from the GPS Account to be made to a health insurance company in New Jersey in the approximate amount of $1,487.

ii. The Housing Company made a second retainer payment by a check for $2,000 dated December 9, 2016 payable to GHS, with "Apply to Acct agreement" written in the memo line. On or about December 16, 2016, defendant THOMAS and defendant APPEL caused the Housing Company's check to be deposited into the GPS Account. On or about

December 19, 2016, defendant THOMAS and defendant APPEL obtained a cashier's check in the approximate amount of $1,680 from that same GPS account, made payable to defendant THOMAS. On or about December 20, 2016, defendant THOMAS and defendant APPEL caused a check for $300 to be issued from that same GPS account, made payable to defendant THOMAS. Defendant Thomas thereafter deposited both the $1,680 cashier's check and the $300 check into his personal Bank D Account.

iii. The Housing Company made a third retainer payment by a check for $2,000 dated January 9, 2017 made payable to GHS, with "Apply to Acct agreement" written in the memo line. In or about January 2017, defendant THOMAS opened an account in the name of GHS at Bank D (the "GHS Account"), for which defendant THOMAS was the only authorized signatory. On or about January 19, 2017, defendant THOMAS caused the Housing Company's check to be deposited into the GHS Account and withdrew approximately $600 in cash. On or about January 23, 2017, defendant THOMAS transferred $1,300 from the GHS Account to THOMAS'S personal Bank D Account. On or about January 23, 2017, THOMAS spent approximately $533 on debit card payments from the Bank D Account, including to a toy store.

iv. The Housing Company made a fourth retainer payment by a check for $2,000 dated February 10, 2017 made payable to GHS, with "Apply to Acct agreement" written in the memo line. On or about February 17, 2017, defendant THOMAS caused the Housing Company's check to be deposited into the GHS Account. Between on or about February 23, 2017 and on or about March 17, 2017, defendant THOMAS withdrew approximately $505 in cash at ATMs from the GHS Account. On or about February 28, 2017, defendant THOMAS spent approximately $791 on debit card payments from the GHS Account, including at a florist. On or about March 10, 2017, defendant THOMAS made a $1,020 debit card payment from the GHS Account to the Preschool.

v. The Housing Company made a fifth retainer payment by a check for $2,000 dated March 10, 2017 made payable to GHS, with "Apply to Acct agreement" written in the memo line. On or about March 21, 2017, defendant THOMAS caused the Housing Company's check to be deposited into the GHS Account. Between on or about March 21, 2017 and on or about April 3, 2017, defendant THOMAS withdrew approximately $2,553 in cash at ATMs from the GHS Account. Between on or about March 21, 2017 and on or about April 6, 2017, defendant THOMAS spent approximately $2,279 on debit card payments from the GHS Account, including for travel expenses, such as shopping and hotel expenses, during a trip to Brazil.

6.  On or about the dates set forth below, in the District of New Jersey, and elsewhere, for the purpose of executing and attempting to execute this scheme and artifice to defraud, defendants

SUDHAN M. THOMAS and
PAUL H. APPEL

knowingly and intentionally did place and cause to be placed in a post office and authorized depository for mail, and did cause to be delivered thereon, certain mail matter, to be delivered by the United States Postal Service, and knowingly and intentionally did transmit and cause to be transmitted by means of wire, radio and television communication, in interstate commerce, certain writings, signs, signals, pictures and sounds, as set forth below:

| Count | Approximate Date | Mailings and Wire Communications |
|---|---|---|
| 20 | October 4, 2016 | Email from defendant THOMAS in New Jersey to one of the Housing Company's owners located in New York outlining potential plan to sell housing units for veterans and the homeless to induce the Housing Company to make monthly payments to GHS. |
| 21 | November 9, 2016 | Email from defendant APPEL in New Jersey to the Housing Company owners in New York and Florida attaching (1) proposed agreement containing false promises and representations regarding GHS nonprofit status, future delivery of regular progress reports, and commitment to sell housing units; and (2) instructions to mail retainer payments payable to GPS to defendant THOMAS and defendant APPEL in Jersey City. |
| 22 | November 18, 2016 | The Housing Company's bank mailed a $2,000 check payable to GHS to an address in Jersey City provided by defendant THOMAS and defendant APPEL. |
| 23 | December 9, 2016 | The Housing Company's bank mailed a $2,000 check payable to GHS to an address in Jersey City provided by defendant THOMAS and defendant APPEL. |
| 24 | January 9, 2017 | The Housing Company's bank mailed a $2,000 check payable to GHS to an address in Jersey City provided by defendant THOMAS and defendant APPEL. |
| 25 | February 10, 2017 | The Housing Company's bank mailed a $2,000 check |

| | | payable to GHS to an address in Jersey City provided by defendant THOMAS and defendant APPEL. |
|----|----------------|------------------------------------------------------------------------------------------------------------------------------------|
| 26 | March 10, 2017 | The Housing Company's bank mailed a $2,000 check payable to GHS to an address in Jersey City provided by defendant THOMAS and defendant APPEL. |

In violation of Title 18, United States Code, Sections 1341 and 1343, and Section 2.

## FORFEITURE ALLEGATION AS TO COUNTS 1 TO 6, 10 TO 12, AND 15 TO 26

1.      As a result of committing the offenses charged in Counts 1 to 6, 10 to 12, and 15 to 26 of this Indictment, defendant THOMAS shall forfeit to the United States, pursuant to Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting or derived from proceeds traceable to these offenses.

## FORFEITURE ALLEGATION AS TO COUNTS 7 TO 9

2.      As a result of committing the money laundering offenses charged in Counts 7 to 9 of this Indictment, defendant THOMAS shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such offenses, and all property traceable to such property.

## FORFEITURE ALLEGATION AS TO COUNTS 13 AND 14

3.      As a result of committing the offenses charged in Counts 13 and 14 of this Indictment, defendant THOMAS shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of these offenses.

### Substitute Assets Provision
### (Applicable to All Forfeiture Allegations)

4.      If any of the property described above, as a result of any act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described in paragraphs 1 to 3.

A TRUE BILL

FOREPERSON

*Craig Carpenito*

CRAIG CARPENITO
United States Attorney

- 40 -

**CASE NUMBER: 20-** 954 (WJM)

## United States District Court
## District of New Jersey

## UNITED STATES OF AMERICA

v.

## SUDHAN M. THOMAS and
## PAUL H. APPEL

### INDICTMENT FOR

18 U.S.C. § 666(a)(1)(A)
18 U.S.C § 981(a)(1)(C), 982
18 U.S.C §§ 1341, 1343, 1344
18 U.S.C § 1956(a)(1)(B)(i)
18 U.S.C. § 2
28 U.S.C. § 2461(c)

A TRUE BILL,



Foreperson

### CRAIG CARPENITO
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

TAZNEEN SHAHABUDDIN
*ASSISTANT U.S. ATTORNEYS*
*(973) 645-2813*